HYMAN FINKELSTEIN, Plaintiff, *v.* METROPOLITAN LIFE INSURANCE COMPANY, Defendant.*

Municipal Court of New York, Borough of Manhattan, First District, April 9, 1934.

*Wikler, Gottlieb & Wikler*, for the plaintiff.

*Tanner, Silcocks & Friend [Leonard M. Gardner* of counsel], for the defendant.

GENUNG, J.   This is an action to recover benefits for total and permanent disability, under a policy of life insurance issued by the defendant.   The policy provides " that if while the above numbered policy is in full force and effect and before default in the payment of any premium, the Company receives due proof that the Insured, as the result of an injury or disease occurring and originating after the issuance of the Policy, has become totally and permanently disabled so as to be unable at any time to perform any work or engage in any business for compensation or profit, the Company will allow the following benefits:

" (a) Provided said disability occur before the Insured attains sixty years of age, but not otherwise, the Company, commencing with the anniversary of the Policy next following receipt of such proof, will waive payment of each premium becoming due during such disability, and, in addition, commencing six months from the receipt of such proof, will pay each month, during the continuance of such disability, to the Insured,   *   *   *   a Monthly Annuity of $10.00 for each $1,000.00 of original insurance under the Policy."

Plaintiff filed proof of claim on November 17, 1932, with the defendant, claiming that he was suffering from a very large irreducible right inguinal hernia, causing him to be totally and permanently disabled. The plaintiff seeks to recover one month's disability, from May 21, 1933, to June 21, 1933, and also the annual premium amounting to the sum of $110.95, paid on February 14, 1933. The defendant denies that plaintiff is totally and permanently disabled and claims that he could be cured by an operation, and, therefore, is not entitled to recover.

It was established at the trial of this action that the plaintiff is a man of thirty-seven years of age, a butcher by trade, and that he had been engaged in such work from the time he was fourteen years of age until the time of his disability, on or about August 14, 1930. It was shown that this was the only trade he had ever learned, and the only occupation he had ever known and the only business in which he had ever engaged. It was further shown that the duties of a butcher consisted in the lifting of heavy pieces of meat, standing behind a block and cutting such meat, and catering to the varied wants of customers. The physical condition of plaintiff prevents him from lifting weights of any kind, moving about or even standing on his feet for any length of time. It is claimed that the size and location of the hernia are such that the use of a truss is impossible and such use would cause severe pain. With respect to the permanence of plaintiff's condition, it appeared from the medical testimony that plaintiff would be totally and permanently disabled as long as the hernia continued, and that the only means of alleviation would be a surgical operation. It further appeared that the physician who treated the plaintiff, and the physician who examined him for the defendant, had advised an operation, to which the plaintiff refused to submit. There was testimony that such an operation is successful in a high percentage of cases, although involving some risk of failure, and that, without such an operation, the present condition will continue to become worse and eventually may cause death.

It was conceded that due proofs of claim were filed with the defendant, and if plaintiff recovers, he is entitled to the full amount claimed. The only question presented is whether the plaintiff is under a duty to submit to a surgical operation as a condition precedent to recovery under the terms of the policy. There are no decisions in this jurisdiction touching this point. In the case of Cody v. John Hancock Mutual Life Ins. Co. (111 W. Va. 518; 163 S. E. 4) the Supreme Court of Appeals of West Virginia held that a party claiming disability, in order to minimize such disability, must submit to treatment to which a reasonably prudent man would

ordinarily submit, providing that such treatment is in accordance with the advice of competent physicians and would have substantially improved his condition. That case involved the removal of diseased tonsils and an infected tooth, which the court held the plaintiff was obliged to have extracted. In the case of *Tittsworth* v. *Ohio National Life Ins. Co.* (6 Tenn. App. 206) the Court of Appeals of Tennessee held that an insurance company cannot take advantage of the refusal of the insured to submit to a simple surgical operation, even though reasonable under the circumstances, for the removal or alleviation of his disability, unless the policy expressly provides therefor. In that case the plaintiff received an injury to his back, resulting in a fracture or dislocation of the coccyx. The physician advised an operation and the plaintiff refused. The court distinguished cases under the Workmen's Compensation Act, citing *Sun Coal Co.* v. *Wilson* (147 Tenn. 118; 245 S. W. 547), where an employee was denied compensation for refusing to have an operation for hernia, and actions for personal injuries, citing *Donovan* v. *New Orleans Railway & Light Co.* (132 La. 239; 61 So. 216), where plaintiff refused to have an operation. The court said: " In this case the complainant seeks to recover upon a contract of insurance. This contract contains no provision, express or implied, that in case of injury or disability the insured will submit to a surgical operation. It is probably presumed that the insured out of a motive of self protection or self preservation, would obtain such medical or surgical treatment as would be necessary; but this matter is left open in the contract. It is not the subject of any stipulation. It is a matter which the insured is left to determine for himself; and if he, through apprehension, or for any other cause, has determined that he will not submit himself to an operation, he is under no contractual obligation to do so."

In *Maresh* v. *Peoria Life Insurance Co.* (133 Kan. 191; 299 Pac. 934), wherein the issue was whether plaintiff's disability was permanent and in which the insurer requested an instruction to the effect that it was the duty of the insured to exercise every reasonable effort to aid recovery, the Supreme Court of Kansas said: " The contract does not so provide. No doubt it is the moral duty of every person to make the most of himself, under even the most adverse circumstances; but the issue in this case was whether plaintiff's disability was permanent."

The defendant has cited the case of *Culver* v. *Metropolitan Life Insurance Co.* (Circuit Ct., Genessee County, Mich.), under a so-called group insurance policy that was carried by the Chevrolet Motor Company upon their employees, wherein plaintiff, after complying with the conditions named, claimed he had become so

totally and permanently disabled as the result of a hernia, " as to be prevented permanently from engaging in any occupation and performing any work for wage or profit." In that case it was conceded that the plaintiff was unable to do any work whatever, and the doctors had advised an operation to correct a hernia, but he refused to submit to an operation, and likewise the doctors had advised that to regain his health he must have his teeth extracted. The court said: " In cases of tort and matters arising under the Workmen's Compensation Law, our courts have repeatedly held that it is the duty of the party claiming damages or compensation to mitigate that damage by proper medical treatment, and surgery, if necessary, if the treatment or surgery does not in itself effect greater hardship upon him, or is not in itself dangerous to his life or health. It is so well established in the law that it is axiomatic that a party seeking damages must do everything within his power to mitigate the same." The court cited *Donnelly* v. *Baird & Co., Ltd.* (1 B. W. C. C. 95); *White* v. *Chicago, etc., R. R. Co.* (145 Iowa, 408; 124 N. W. 309), and *Krieinovich* v. *American Car & Foundry Co.* (192 Mich. 687), and held that the rule applicable to tort actions and compensation cases applied with equal force under the insurance policy in question.

The question of the duty of plaintiff to submit to an operation in mitigation of damages has arisen in negligence actions involving a hernia with resulting disability as consequential damage. (*Williams* v. *City of Brooklyn*, 33 App. Div. 539; *Blate* v. *Third Ave. R. R. Co.*, 44 id. 163.) In both cases the defendant urged that part of the quantum of ultimate loss was caused by plaintiff's own failure to act reasonably, for which part defendant ought not to be liable, in that plaintiff refused to submit to an operation which would have prevented the permanent disability. In the first case the court held that plaintiff's conduct could not as a matter of law be held unreasonable, and in the latter case the court said: " The law lays down no hard and fast rule as to the duty of the plaintiff under such circumstances. Whether an operation for his ailment, which might endanger his life in any degree, must be submitted to, is a question which the law cannot answer, nor does it lie in the mouth of a jury to say that the plaintiff should or should not do any particular thing. They are concerned simply with the affairs presented to them at the trial, and whether the damages then appearing to exist are the natural and probable result of the injuries, diminished by the efforts for a cure which a reasonably prudent man would have made. This is substantially what was said by the learned trial justice, and with this statement of the law we are content."

A similar question has arisen in other jurisdictions in actions for personal injuries, where plaintiff has refused to submit to an operation. In *Martin* v. *Pittsburgh Railways Co.* (238 Penn. St. 528; 86 Atl. 299) the plaintiff refused to submit to an operation, which was advised, to have the womb placed in a normal position, after a miscarriage caused by an accident which was the basis for an action for damages. The Supreme Court of Pennsylvania said: "It is apparent from the testimony that the additional operation suggested by the medical experts for the defense was a serious one, attended with some risk of failure, and not a simple one; therefore her refusal to undergo it would in no sense affect her right of recovery. The rule laid down in *Kehoe* v. *Traction Co.* (187 Penn. St. 474), concerning operations of the former nature would apply and not that referred to in *Leitzell* v. *D., L. & W. R. R. Co.* (232 Penn. St. 475), concerning simple operations."

In *Gibbs* v. *Almstrom* (145 Minn. 35; 176 N. W. 173), a case under the Workmen's Compensation Act, plaintiff claimed that the bridge of his nose was broken, causing stoppage of nasal passage and disfigurement and a defect in speech. The Supreme Court of Minnesota said: "Defendant contends that this condition of the nose may be cured by an operation. This contention requires scant comment. We recognize the principle that a person injured is required to exercise reasonable precaution to keep down damages caused by the act of the wrong doer, but no man is required to risk his life upon the operating table for any such purpose. This proposition has been decisively settled in this state."

In *Jendrus* v. *Detroit Steel Products Co.* (178 Mich. 265), where an accident resulted in perforation of the intestines and the injured party refused to have an operation and died, the Supreme Court of Michigan, in passing on the claim of the widow for compensation, held that the court could not determine as matter of law that decedent's conduct was so unreasonable as to forfeit the right to compensation under the Workmen's Compensation Act.

This is an action under a policy of life insurance and both parties are bound by the provisions of the policy. "As to the stipulations of insurer and insured, and the warranties and conditions of the policy, it is construed as a contract *stricti juris*, the words of the policy being weighed scrupulously, provided the covenants are clear in themselves." (Cady Law of Insurance [3d ed.], p. 20.) Whatever may be the rule in actions for personal injuries and claims arising under the Workmen's Compensation Acts, the rule in actions under a policy of insurance would seem to be that, in the absence of any stipulation in the policy requiring the insured to submit to a surgical operation, the plaintiff is under no duty to submit to

an operation as a condition precedent to recovery under the terms of the policy. To hold otherwise would be to incorporate into the policy a new provision not therein contained and to impose upon the insured an obligation not stipulated in the contract. The court is powerless to make such a change in the policy and is bound to enforce the contract as it is written.

The plaintiff, therefore, is entitled to recover the amount demanded in the complaint, with interest, and judgment is awarded accordingly, with ten days stay of execution.